UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SARAH BANTA,<br><br>    Plaintiff,<br> v.<br><br>COSTCO WHOLESALE CORPORATION; and DOES I-V,<br><br>    Defendants. | Case No. 3:23-cv-00054-MMD-CLB<br><br>ORDER |

**I. SUMMARY**

Plaintiff Sarah Banta sued Defendant Costco Wholesale Corporation ("Costco") for negligence following an undisputed slip-and-fall incident at the condiment station of a Costco food court in Carson City, Nevada. (ECF No. 1 at 8.) The Court held a bench trial ("Trial") (ECF Nos. 60-62, 64 (minutes of proceedings); ECF Nos. 66-69 (trial transcripts)) and now makes the following findings of fact and conclusions of law. As explained below, Plaintiff fails to establish by a preponderance of the evidence that Costco had constructive notice of food debris on the floor prior to the accident and therefore cannot show a breach of duty of care. The Court finds that Plaintiff cannot establish Costco's liability on her single negligence claim. Accordingly, the Court directs judgment in Defendant Costco's favor.

///
///
///
///
///
///

## II. EXCLUDED TESTIMONY

At the Trial, the Court granted Plaintiff's motion for Rule 37 sanctions in part in striking testimony of Costco's employees relating to the written floor walk and safety policies and procedures that were not disclosed, including the risk management manual and the online training relating to the floor inspections. (ECF No. 68 at 125-26, 184-85.) The parties filed separate post-trial briefs to identify testimonies that fall into this category. (ECF Nos. 71, 73.) The Court agrees with the parties that the testimonies discussing the "incident report" filled out by Costco employees should be stricken. This is not to be confused with the "member report of incident" (Ex. 16) filled out by Banta, which was included in the initial disclosures. (*See* ECF No. 68 at 107.) In addition, the Court rejects Plaintiff's proposal to strike employee testimony relating to Costco's "daily floor walk-safety inspection sheet" (Ex. 11). (ECF No. 73-4 at 11.) The Court finds that the inspection sheet does not fall within the policy and procedures category.

## III. FINDINGS OF FACT

The Court makes the following findings of fact based on testimony and other evidence[1] admitted during the Trial, along with the pre-trial and post-trial briefing the parties filed in this case. (ECF Nos. 50, 53, 70, 72.)

### A. Slip-and-Fall Incident

1. Plaintiff's slip-and-fall incident occurred on April 16, 2022 at approximately 11:35:22 a.m. in the food court area of Costco Wholesale Corporation (Number 127) located at 700 Old Clear Creek Road, Carson City, Nevada. (Ex. 1; Ex. 16; Ex. 512 at 4; *see also* ECF No. 66 at 21.)

2. Plaintiff was a Costco customer at the time of her slip-and-fall. (ECF No. 53 at 2.)

---

[1]The parties submitted exhibit lists at ECF No. 52 and ECF No. 55. "Ex." in this Order refers to an exhibit admitted at the Trial.

3. Plaintiff had purchased a hot dog and was walking to the self-service condiment station in the food court to obtain mustard when she fell. (ECF No. 53 at 2; *see also* ECF No. 66 at 32, 36.)

4. Plaintiff slipped and fell on some food debris (ECF No. 53 at 2), which may have been a piece of lettuce (*id.* at 4) or onion (Ex. 512 at 4, 9).[2]

5. The food debris remaining after the incident, as depicted in the only photo taken (Ex. 17), is miniscule, measuring approximately one-eighth to one-quarter (*see* ECF No. 50 at 3) of an inch.

6. If the concrete in-seam shown in Ex. 17 measured approximately one-eighth of an inch, then the debris is roughly the same size. (ECF No. 66 at 107; ECF No. 67 at 172; *see also* ECF No. 70 at 3.)

7. The fall was captured on surveillance video at 11:35:22 a.m., but the video shows no obvious debris or substance on the floor.[3] (*See* Ex. 1; *see also* ECF No. 50 at 3.)

8. Between 9:35 a.m. and 11:35:22 a.m., a total of 26 employees are seen entering and exiting through the employee door located to the immediate left of the condiment counter. (ECF No. 63; ECF No. 65 at 1; *see also* ECF No. 66 at 89.) During the same period, 141 customers—126 adults and 15 children—are seen

---

[2]Plaintiff testified that, after the fall, she believes she saw a piece of onion. (Ex. 512 at 4, 9.) At the Trial, a pixelated image of the food debris was admitted. (*See* Ex. 17.) A customer eyewitness who observed Plaintiff's fall pointed to the ground in the area of the incident. (ECF No. 67 at 164-65.) Following the accident, Costco employee, Jessica Nelson, went to the area, observed debris on the ground, and took a photograph with her cell phone (*id.* at 108, lines 9-14; *id.* at 165, lines 21-25), while another employee used a broom and dustpan to sweep the area (*id.* at 94). At the Trial, Nelson speculated that the debris may have been a piece of lettuce. (*Id.* at 108, lines 6-8.)

[3]Four hours of store video surveillance were preserved before and after Plaintiff's fall, which occurred at 11:35:22 a.m. (ECF No. 53 at 2-3.) Although Plaintiff stated in discovery that she slipped on an unknown liquid (*see* Ex. 512 at 3-4), the member incident report filed with Costco does not reference any liquid (Ex. 16), and the video footage shows otherwise. (ECF No. 70 at 3.) Moreover, as noted, a Costco employee used a broom and dustpan to sweep the area (*id.* at 94), further suggesting the substance was not liquid.

|   |   |
|---|---|
| | in the food area. (ECF No. 63; ECF No. 65 at 1; *see also* ECF No. 53 at 3.) Approximately 116 of those customers are seen in the general vicinity of the condiment counter. (*Id.*) |
| 9. | At 11:13 a.m., Costco employee, Shannon Moats, conducted a floor-walk inspection to check for hazards in the food area and found none. (ECF No. 67 at 196, 201; Exs. 11-12; *see also* ECF No. 70 at 2.) |
| 10. | At 11:15:57 a.m., Moats wiped down the condiment counter. (ECF No. 65 at 1; Ex. 1.) |
| 11. | Between the floor-walk inspection at 11:13 a.m., the counter wipe at 11:15 a.m., and the time of the incident, approximately 27 customers are observed stopping at the condiment station. (Ex. 1.) Dozens can also be seen eating and drinking in front of or adjacent to the condiment station where the slip-and-fall occurred. (*Id.*) The food court area contains only two tables available for customer seating.[4] (*Id.*) |
| 12. | Immediately after the fall, Plaintiff stood up on her own (ECF No. 66 at 108) and continued her activities near the condiment station, including placing mustard on her hot dog.[5] (*Id.* at 108-09; *see also* Ex. 1.) |
| 13. | Plaintiff then spent several minutes completing a member report of the incident with Costco stating that she, "slipped [sic] on a piece [sic] of something food was wet and slippery." (Ex. 16.) |

---

[4]The store video was reviewed by Bill Frankmore Productions to provide a summary of the four-hour footage. (ECF No. 53 at 3; Ex. 2-001-003.) Mr. Frankmore's summary included pertinent information, such as the time of the fall, the number of employees who entered or passed through the area (26 employees), and the customers present in the vicinity of the fall (141 customers). (*Id.*) The summary also detailed activity near the condiment station, including its use, and identified individuals seated at the two tables located in that section of the food court. (*Id.*)

[5]Plaintiff stood up on her own at approximately 11:35:32 a.m. and, after completing her member incident report (Ex. 16), left the premises with another individual at approximately 11:50:29 a.m. (Ex. 1.) Video surveillance indicates that roughly 15 minutes elapsed between the fall and her departure, during which time Plaintiff is seen walking in what appears to be a normal, unencumbered manner. (*Id.*)

14. Following the incident, Plaintiff experiences regular knee pain.[6] (ECF No. 66 at 79-81.)

### B. Defendant's Business Model/Food Policy

15. The food court area consists of a self-service condiment stand and two picnic tables where members may sit to eat. (Ex. 1.)

16. Under Costco's business model, the consumption of food and beverages is not restricted within the store, and customers may eat and drink while shopping. (ECF No. 67 at 10-11, 13, 187.) Additionally, the food sold at the service area is priced affordably and is intended to incentivize members to shop. (*Id.* at 13.)

### C. Defendant's Sweep Practices

17. Defendant's practice involves conducting hourly floor walks and daily safety inspections.[7] (*See, e.g.*, Ex. 11; *see also* ECF No. 67 at 122, line 18, 136.) These inspections include checks for trash, spill, and trip hazards in the food court patio area. (*See, e.g.*, Ex. 11; *see also* ECF No. 67 at 122, 134, lines 3-16, 136.)

///

///

---

[6] The Court questions Plaintiff's credibility regarding the circumstances of the fall and, particularly, her testimony concerning subsequent falls. Plaintiff admitted at her August 10, 2023 deposition that she had not experienced any falls since the incident at Costco. (ECF No. 66 at 69-70.) However, during direct examination at the Trial, Plaintiff testified to several subsequent incidents in which she lost stability. She described instances including stumbling while walking to physical therapy when her legs gave way (*id.* at 64), a snow-shoveling incident in which she did not fall (*id.* at 65), and an occasion when she tripped over her dog and bumped her leg on an object (*id.*).

[7] At the Trial, multiple witnesses testified to the existence of floor walk and safety inspection practices; however, the Court struck trial testimony concerning Costco's *written* sweep and inspection policies and procedures (e.g., the risk management manual, the online training relating to the floors, and the floor walk and safety procedure that witnesses testified to) as a sanction for Defendant's Rule 26 disclosure violation. (*See* ECF No. 68 at 125-26, 185.) As mentioned above, the Court rejects Plaintiff's proposal to strike employee testimony relating to Costco's "daily floor walk-safety inspection sheet" (Ex. 11; ECF No. 73-4 at 11) since the inspection sheet does not fall within the policy and procedures category.

18. Defendant also cleans its floors before the store opens (ECF No. 67 at 73-74), and employees are instructed to clean any hazards observed on store floors (*id.* at 17, line 25; *id.* at 18).

19. Assistant Manager, Laura Gumina, testified that she personally follows a "don't-walk-by" rule[8], which embodies the principle of "see something, say something." (ECF No. 67 at 156.) That is, if an employee observes a foreign substance (e.g., spill; trash) on the floor, then they are required to address it and clean it up. (*See also* ECF No. 62-1 at 9.)

20. Defendant's daily Floor-Walk/Safety Inspection Sheet indicates that, on April 16, 2022, Costco employees conducted 11 inspections beginning at 8:08 a.m., 9:00 a.m., 10:05 a.m., 11:13 a.m., and 12:22 p.m.[9] (Ex. 11.)

21. Costco employee Shannon Moats performed the floor inspection of the food court on April 16, 2022 at 11:13 a.m. to check for hazards. (ECF No. 67 at 196, 201; Exs. 11-12.) Moats testified as to her routine visual inspections of the food court, stating: "I'm looking at everything. I'm looking at the floor. I'm looking at the tables. I'm looking to see the trash, around the trash can." (ECF No. 67 at 196, lines 22-24.) According to Moats, she "did not observe any issues" during her inspection of the food court floor.[10] (Ex. 12 at 2.)

///

///

---

[8]Gumina clarified that no formal written Costco policy called the "don't-walk-by" policy exists. (ECF No. 67 at 156.) The Court notes that it previously ruled that testimony relating to Costco's oral policy is admissible and will not be stricken. (*See* ECF 68 at 185.) Therefore, the Court considers the "don't-walk-by" rule to be an oral policy and will consider the evidence.

[9]The Court excluded evidence of subsequent remedial measures over Plaintiff's objections. Therefore, the Court does not consider evidence of floor walks occurring after 12:22 p.m.

[10]Video footage also shows the Costco employee inspecting the food court for hazards approximately 22 minutes before the incident. (*See* Ex. 1.)

6

22.  There was one wipe-down of the condiment station counter before the slip-and-fall, performed by Moats with a rag at approximately 11:15:57 a.m. (ECF No. 65 at 1; *see* Ex. 1.)

## IV.  CONCLUSIONS OF LAW

Plaintiff asserts a single claim for negligence. Plaintiff argues that Defendant breached a reasonable standard of care by failing to adequately inspect the floor for hazardous conditions, including food debris, and by failing to perform floor sweeps near the condiment stand prior to the incident. (ECF No. 53 at 11.) Defendant counters that it owed Plaintiff only a "duty to keep the premises in a reasonably safe condition," which it satisfied because it lacked "actual or constructive notice of the onion (or other foreign substance)" on the floor. (ECF No. 50 at 4-5.) The Court finds that Plaintiff has not shown by a preponderance of the evidence that Defendant knew or should have known of the presence of food debris on the food court floor adjacent to the condiment station and therefore cannot establish liability. Accordingly, the Court does not reach the issue of damages.

### A.  Negligence: Burden of Proof and Elements

1.  A plaintiff bears the burden of proof to establish a cause of action for negligence. *See, e.g.*, *Sims v. General Tel. and Electric*, 815 P.2d 151, 154 (Nev. 1991). The burden of proof is preponderance of the evidence. *See, e.g.*, *States Marine Corp. v. Producers Co.-op. Packing Co.*, 310 F.2d 206, 212 (9th Cir. 1962).

2.  To state a claim for negligence, a plaintiff must show "(1) that the defendant had a duty to exercise due care with respect to the plaintiff; (2) that the defendant breached this duty; (3) that the breach was both the actual and proximate cause of the plaintiff's injury; and (4) that the plaintiff was damaged." *Joynt v. Cal. Hotel & Casino*, 835 P.2d 799, 801 (Nev. 1992) (citation omitted).

3. "The owner or occupant of property is not an insurer of the safety of a person on the premises," but a business owner does have a duty to its patrons to keep the premises reasonably safe. *See, e.g.*, *Sprague v. Lucky Stores, Inc.*, 849 P.2d 320, 322 (Nev. 1993) (citation omitted).

4. As a business owner, Defendant owed Plaintiff a duty to keep Costco reasonably safe.

5. A temporary hazardous condition on the premises triggers a duty of care depending on its cause. *See Eldorado Club v. Graff*, 377 P.2d 174, 176 (Nev. 1962); *see also Asmussen v. New Golden Hotel Co.*, 392 P.2d 49, 50 (Nev. 1964) ("The presence of a foreign substance on a floor generally is not compatible with the standard of ordinary care.").

6. A business owner breaches its duty of care if a hazardous condition causes a slip-and-fall accident, and the business owner or one of its agents caused the hazardous condition. *See Asmussen*, 392 P.2d at 50; *see also Sprague*, 849 P.2d at 322 ("Where a foreign substance on the floor causes a patron to slip and fall, and the business owner or one of its agents caused the substance to be on the floor, liability will lie, as a foreign substance on the floor is usually not consistent with the standard of ordinary care.") (citation omitted).

7. Alternatively, if the business owner or its agents did not cause the hazardous condition, the business owner breaches its duty of care if it had actual or constructive notice of the hazardous condition and did not remedy it.[11] *See Asmussen*, 392 P.2d at 50.

---

[11] "[T]here is a modern trend toward modifying this traditional approach to premises liability to accommodate newer merchandising techniques, such as the shift that grocery stores have made from clerk-assisted to self-service operations." *See FGA, Inc. v. Giglio*, 278 P.3d 490, 496 (Nev. 2012) (internal citation omitted). The "mode of operation" approach, which "focuses on the nature of the business at issue," is discussed below. *See id.*

8. Constructive notice of a hazardous condition exists if the defendant should have known about the hazard. *See Sprague*, 849 P.2d at 322-23 (citation omitted).

9. Constructive notice may be established from the nature of how a business manages hazardous conditions. *See FGA, Inc. v. Giglio*, 278 P.3d 490, 496 (Nev. 2012). A plaintiff must show that there was a recurrent risk on the premises even with the nature of the business's mode of operation to prevent hazards. *See id.* at 497, n.5.

10. Absent any additional evidence, the mere presence of a hazardous condition is not sufficient to establish constructive notice. *See Linnell v. Carrabba's Italian Grill, LLC*, 833 F. Supp. 2d 1235, 1238 (D. Nev. 2011).

11. "[W]here an owner's chosen mode of operation makes it reasonably foreseeable that a dangerous condition will occur, a store owner could be held liable for injuries to an invitee if the plaintiff proves that the store owner failed to take all reasonable precautions to protect invitees from these dangerous conditions." *Giglio*, 278 P.3d at 496.

12. Under the mode of operation approach, "the plaintiff's burden to prove notice is not eliminated. Instead, the plaintiff satisfies the notice requirement if he establishes that an injury was attributable to a reasonably foreseeable dangerous condition on the owner's premises that is related to the owner's self-service mode of operation." *Giglio*, 278 P.3d at 496 (quoting *Sheehan v. Roche Bros. Supermarkets, Inc.*, 863 N.E. 2d 1276, 1283 (Mass. 2007)).

13. The rationale underlying the mode of operation approach is "that an owner of a self-service establishment has, as a cost-saving measure, chosen to have his customers perform tasks that were traditionally performed by employees." *Giglio*, 278 P.3d at 496 (citation omitted).

14. If a customer who is performing such a task negligently creates a hazardous condition, the owner is "charged with the creation of this condition just as he would be charged with the responsibility for negligent acts of his employees" because it was the owner's choice of mode of operation that created the risk. *Giglio*, 278 P.3d at 496.

**B. Cause of Food Debris on the Floor**

15. The Court finds by a preponderance of the evidence that the substance on the food court floor was food debris—either lettuce or onion.

16. To establish a breach of duty, Plaintiff must prove that Costco or its agents caused the food debris that resulted in the slip-and-fall incident; or, alternatively, that Costco or its agents had actual or constructive notice of the food debris and failed to remedy it.

17. Plaintiff has not met her burden of establishing by a preponderance of the evidence that Costco or its agents caused the food debris to be on the food court floor.

18. While the evidence presented indicates that some debris was on the floor, Plaintiff failed to prove that Defendant or its agents caused its presence.

19. Accordingly, the Court finds that neither Defendant nor its agents caused the hazardous condition that led to Plaintiff's fall. Plaintiff may thus only recover if Defendant had actual or constructive notice of the food debris and failed to remedy it.

**C. Actual or Constructive Notice**

20. Plaintiff has also not met her burden to show that Defendant had actual or constructive notice of the food debris and failed to remedy it.

///

///

///

21. Plaintiff provides no evidence that Defendant had actual notice of the hazardous condition and failed to remedy it.[12] And the Court finds no such evidence of actual notice.

22. Plaintiff may, therefore, only prove breach through constructive notice. However, Plaintiff fails to establish by a preponderance of the evidence that a recurrent risk of food debris existed in the incident area, even with Costco's hourly-sweeps policy. Nor does Plaintiff prove that Costco's hourly-sweeps policy fell below a reasonable standard of care.

23. Moreover, Plaintiff offers no evidence that other patrons fell on the premises, reported a recurrent risk, or that any Costco employee or agent knew of a recurrent risk on the food court floor.

24. Defendant mitigated hazards through its policy of performing hourly floor walks and multiple daily inspections.

25. An employee conducted a floor walk of the area of the incident at 11:13 a.m. to check for hazards, did not notice any, and continued her inspection of other areas of the store. This timing is in accordance with Costco's sweeping and inspection policies and does not indicate that Defendant fell below the appropriate standard of care.

26. Moreover, in the time leading up to and following the accident, other patrons walked near or through the incident area without falling.

27. Plaintiff, therefore, has not established by a preponderance of the evidence that Defendant had actual or constructive notice of the food debris on the floor. Employees complied with Costco's hourly sweep and daily inspection

---

[12]On the day of the incident, Costco employees conducted 11 inspections of the incident area, which included checking for trash, spill, and trip hazards in the food court patio. Costco employees also conducted hourly floor walks of the incident area to check for and clean any debris that could pose a hazard to patrons. Moreover, an employee performed a floor walk between 11:13 a.m. and 12:02 p.m. and did not observe any hazard on the food court floor.

policies, and no evidence demonstrates that they could have otherwise known of the food debris. Moreover, there was not a recurrent risk of slip-and-fall incidents in spite of the sweep and inspection policy.

28. The Court therefore finds that Defendant did not breach its duty of care to Plaintiff because it did not have actual or constructive of the food debris that caused Plaintiff to slip and fall.

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court reviewed these arguments and cases and determines that they do not warrant discussion as they do not materially affect the outcome of this case.

It is therefore ordered that Plaintiff fails to establish liability on her single claim for negligence.

The Clerk of Court is directed to enter judgment in Defendant's favor and close this case.

DATED THIS 7th Day of January 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE